UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

ANTHONY TUCKER,

                    Plaintiff,

          -against-

CITY OF NEW YORK, POLICE OFFICER
RAYMOND ORTIZ, LIEUTENANT
WASHINGTON ZURITA, and JOHN DOE
POLICE OFFICERS 1-4,

                    Defendants.
_____x

No. 16 Civ. 3176 (DLC)

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

        Plaintiff Anthony Tucker, by and through his attorneys, Cuti Hecker Wang LLP, for his Complaint alleges as follows:

## NATURE OF THE ACTION

        1.      On a summer evening in late August, 2015, Plaintiff Anthony Tucker stood chatting with a young man he knew in East Harlem.  They were on the sidewalk, near 1799 Lexington Avenue.

        2.      Mr. Tucker had grown up in the neighborhood, and was known as a role model for young African-American men, like his friend that evening.  Mr. Tucker, himself African-American, had emerged from East Harlem and successfully obtained college and graduate degrees.

        3.      Even after he left East Harlem, Mr. Tucker remained deeply committed to his community.  He chose to become a New York City public school teacher in the Bronx, and he

1

kept connections with his old neighborhood, including by mentoring other young men to help them achieve similar educational and professional success.

4.      But none of that mattered on August 28, 2015, when two police officers approached Mr. Tucker and his friend, and without any basis whatsoever, told them to "move along."  Mr. Tucker calmly asked the lead officer – Police Officer Raymond Ortiz ("Defendant Ortiz") – why they had to move.  In response, Defendant Ortiz offered shifting and baseless explanations and became increasingly agitated.

5.      Defendant Ortiz angrily warned Mr. Tucker that he would be arrested if he did not move along, despite the fact that Mr. Tucker had done nothing wrong and had every right to converse on a public street.

6.      Mr. Tucker again asked a question simply to understand what the basis was for the order – something that Defendant Ortiz would not countenance.  Defendant Ortiz angrily handcuffed Mr. Tucker and placed him under arrest.  Defendant Ortiz clasped the handcuffs so tightly that Mr. Tucker's wrists suffered significant bruising.  Mr. Tucker was directed to a police car, transported to the 23rd Precinct, and placed in a holding cell.

7.      Mr. Tucker eventually was permitted to leave with a summons, which contained a spurious charge for Disorderly Conduct that was dismissed before Mr. Tucker ever appeared in court.  The arrest left Mr. Tucker physically injured on both wrists and emotionally harmed by the officers' abuse of power and the frightening reminder that no matter what he achieved in life, Mr. Tucker could be subjected at any time to arbitrary and unconstitutional police conduct in the very neighborhood where he had been raised.

## JURISDICTION AND VENUE

8.      This action arises under the United States Constitution, 42 U.S.C. §§ 1983 and

1988, Article I, § 12 of the New York State Constitution, and New York common law.

9.      This Court has jurisdiction pursuant to 28 U.SC. §§ 1331, 1343(a), and 1367.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

11.     Plaintiff Anthony Tucker resides in the Bronx, New York.

12.     Defendant City of New York ("City") was and is a municipality that is a political

subdivision of the State of New York.  At all times relevant hereto, defendant New York City,

acting through the New York City Police Department ("NYPD"), was responsible for the policy,

practice, supervision, implementation, and conduct of all NYPD matters and was responsible for

the appointment, training, supervision, and conduct of all NYPD personnel, including the

defendants referenced herein.  In addition, at all relevant times, the City was responsible for

enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the

United States and State of New York.

13.     At all times relevant hereto, Police Officer Raymond Ortiz was a police officer

employed by the NYPD, acting in the capacity of an agent, servant and employee of defendant

City, and within the scope of his employment as such.

14.     At all times relevant hereto, Lieutenant Washington Zurita was a police lieutenant

employed by the NYPD, acting in the capacity of an agent, servant and employee of defendant

City, and within the scope of his employment as such.

15.     At all times relevant hereto, defendant Police Officers John Does #1-4 (the "Doe

Defendants"), whose actual names and badge numbers are not known to Plaintiff despite

reasonable efforts to obtain such information, and who are sued herein by the fictitious designation of "John Doe," were police officers and members of the NYPD.  With regard to all relevant events, the Doe Defendants were acting within the scope of their capacity as agents, servants, and employees of the City.

16.     At all relevant times, Defendant Ortiz, Lieutenant Zurita and the Doe Defendants (collectively, the "Officer Defendants") were acting under color of state law.

## JURY DEMAND

17.     Plaintiff hereby demands a trial by jury on all of his claims in this action.

## FACTUAL ALLEGATIONS

18.     On the afternoon of Friday, August 28, 2015, Anthony Tucker picked up his daughter from school and dropped her with her mother.  He went from there to meet some friends who lived nearby in East Harlem, where Mr. Tucker grew up.

19.     Mr. Tucker arrived in East Harlem before his friends returned from work, so he passed some time in a barbershop that he had frequented for years.

20.     It was a warm and pleasant summer evening, and Mr. Tucker eventually left the barbershop to spend some time outside.  He encountered a young man who lived nearby, whom Mr. Tucker knew from the neighborhood and mentored.

21.     The week before, Mr. Tucker had spoken at a program named Exodus for young men re-entering society after incarceration, encouraging them to be productive and successful citizens.  Mr. Tucker's friend had attended that meeting, and appreciated Mr. Tucker's continuing guidance on parenting and other issues.

22.     At no time during their conversation on August 28, 2015, did Mr. Tucker or his friend cause a public disturbance or break any law.

4

23.     At approximately 8:00 p.m., an unmarked police vehicle pulled up to the southeast corner of the block where Mr. Tucker and his friend were conversing.

24.     Without any provocation, two officers (Defendant Ortiz and Defendant Zurita) emerged from the vehicle and approached Mr. Tucker and his friend.  Mr. Tucker and his friend were not engaged in conversation with anybody else at the time, and there was no crowd or group gathered near them.

25.     Immediately upon walking up to Mr. Tucker, Defendant Ortiz instructed him to "move along."

26.     Mr. Tucker politely introduced himself to Defendant Ortiz, extended his hand to greet Defendant Ortiz, and asked why he was being told to move along.  Defendant Ortiz curtly responded "Because I said so."

27.     Mr. Tucker explained that he and his friend were mid-conversation, and that Defendant Ortiz merely "saying so" did not seem like a valid reason for Mr. Tucker to be forced to move.

28.     Defendant Ortiz became increasingly incensed by Mr. Tucker's requests for an explanation as to why he needed to "move along" when he was merely attempting to converse with a young man he mentored.

29.     In the brief interaction between Mr. Tucker and Defendant Ortiz, Defendant Ortiz offered conflicting reasons for his instruction to Mr. Tucker.

30.     Initially, Defendant Ortiz told Mr. Tucker that he had to move because Defendant Ortiz "said so."  After Mr. Tucker expressed concern with that response, Defendant Ortiz claimed that Mr. Tucker had to move because people were calling the police.  When Mr. Tucker responded that people were not calling the police for him, Defendant Ortiz did not respond

5

substantively; instead, he tried to provoke Mr. Tucker by banging his flashlight against a nearby stoop and asking if Mr. Tucker lived there.

31.     Defendant Ortiz warned Mr. Tucker that he would be "locked up" if he did not move along.

32.     Mr. Tucker remained calm and composed but, without further warning, Defendant Ortiz handcuffed Mr. Tucker and placed Mr. Tucker under arrest.

33.     Defendant Ortiz applied his handcuffs so tightly that Mr. Tucker was in substantial pain.  Mr. Tucker could not stand or sit up straight because the handcuffs were so tight.

34.     After placing Mr. Tucker under arrest, the officers searched his person and backpack.  They found nothing illegal.

35.     Defendant Ortiz and Defendant Zurita escorted Mr. Tucker to their unmarked car and drove Mr. Tucker to the 23rd Precinct.

36.     Throughout the drive, Defendant Ortiz was highly agitated.  He angrily pointed to people of color standing outside conversing or socializing, and told Mr. Tucker, in sum and substance, "I am telling you motherf*#kers all the time to move from here."

37.     Mr. Tucker was alarmed by Defendant Ortiz's attitude and unabashed hostility toward the people he purportedly was working to serve and protect.

38.     While in the vehicle, Mr. Tucker advised Defendant Ortiz and Defendant Zurita that the handcuffs were too tight.  They ignored his complaint.

39.     Mr. Tucker complained again upon exiting the vehicle that the handcuffs were too tight.  He was told that the police would take care of it when Mr. Tucker got inside.

6

40.     Even after arriving inside, however, the officers did not loosen the handcuffs until after further searching Mr. Tucker's person.

41.     Mr. Tucker was placed inside a cell at the precinct, but he was given no explanation for why he was there or what he had done wrong.

42.     After approximately an hour of waiting in custody, Mr. Tucker was released from the cell and handed a summons charging him with Disorderly Conduct – specifically, violating Section 240.20(6) of the Penal Law of the State of New York, which prohibits congregating "with other persons in a public place" and refusing to comply with a lawful order to disperse. The summons directed Mr. Tucker to appear in court on October 20, 2015.

43.     On the summons, Defendant Ortiz memorialized two statements made by Mr. Tucker during their encounter: (i) "Why do I have to leave?" and (ii) "Why can't I stay?"

44.     Prior to his appearance date, Mr. Tucker received a letter from the Criminal Court of the City of New York stating that his case had been dismissed and sealed pursuant to Section 160.50 of the CPL on October 13, 2015.

45.     Plaintiff filed a sworn Notice of Claim within 90 days after the claims alleged herein arose.  The notice was served on Defendants by hand on October 22, 2015.

46.     Mr. Tucker sat for a 50-h deposition on January 15, 2016.

47.     At least 30 days have elapsed since service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

7

**FIRST CAUSE OF ACTION**
**(Excessive Force under 42 U.S.C. § 1983)**
**(Against the Officer Defendants)**

48.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

49.     At all relevant times, the Officer Defendants were acting under color of state law.

50.     The level of force employed by the Officer Defendants was excessive, objectively unreasonable and otherwise in violation of Mr. Tucker's constitutional rights.

51.     As a result of the aforementioned conduct of Defendants, Plaintiff Tucker was subjected to excessive force and sustained damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)**
**(Against the Officer Defendants)**

52.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

53.     The Officer Defendants wrongfully and intentionally stopped Mr. Tucker without reasonable suspicion, causing him to be detained against his will.

54.     The Officer Defendants wrongfully and intentionally arrested Mr. Tucker without a warrant and without probable cause, causing him to be detained against his will and subjected to physical restraints.

55.     Mr. Tucker was conscious of this confinement.

56.     Mr. Tucker did not consent to this confinement.

57.     This confinement was not legally privileged.

58.     As a direct and proximate result of this false arrest and imprisonment, Plaintiff Tucker suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)
### (Against the Officer Defendants)

59.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

60.     While Mr. Tucker was unlawfully arrested and subjected to painfully-tight handcuffing, Defendant Zurita was present, as were two uniformed officers who had been on patrol nearby.

61.     These Officer Defendants had an affirmative duty to intervene on behalf of Mr. Tucker, whose constitutional rights were being violated in their presence by other officers.

62.     The Officer Defendants failed to intervene to prevent the unlawful conduct described herein.

63.     As a result of the foregoing, Mr. Tucker's liberty was unlawfully restricted.

64.     Mr. Tucker was detained after the Officer Defendants knew that they lacked probable cause to arrest.

65.     As a direct and proximate result of this failure to intervene, Plaintiff Tucker suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Assault)
### (Against All Defendants)

66.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

67.     The Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Mr. Tucker, in that the Officer Defendants had the real or apparent ability to cause imminent harmful and/or offensive bodily contact to Mr.

9

Tucker, and intentionally did violent and/or menacing acts, which threatened such contact to Mr.

Tucker, and such acts caused apprehension of such contact in Mr. Tucker.

68.     At all relevant times, the Officer Defendants were employees of Defendant City

acting within the scope of their employment.  Defendant City is therefore liable for the officers'

wrongdoing under the doctrine of *respondeat superior*.

69.     As a direct and proximate result of this assault, Plaintiff Tucker has suffered

damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Battery)**
**(Against All Defendants)**

70.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth

herein.

71.     The Officer Defendants, acting within the scope of their employment,

intentionally, willfully, and maliciously battered Mr. Tucker including by placing painfully-tight

handcuffs on Mr. Tucker's wrists, without his consent, and with the intent to cause harmful

and/or offensive bodily contact to Mr. Tucker.

72.     At all relevant times, the Officer Defendants were employees of Defendant City

acting within the scope of their employment.  Defendant City is therefore liable for the officers'

wrongdoing under the doctrine of *respondeat superior*.

73.     As a direct and proximate result of this battery, Plaintiff Tucker has suffered

damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Negligent Screening, Hiring and Retention)**
**(Against City of New York)**

74.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

75.     Defendant City, through the NYPD, owed Mr. Tucker a duty of care to prevent the physical and mental abuse Mr. Tucker suffered at the hands of City employees.

76.     Upon information and belief, Defendant City, through the NYPD, owed this duty of care to Mr. Tucker because under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that the Officers Defendants' conduct was likely to result in an injury to Mr. Tucker or a similarly situated person.

77.     Upon information and belief, the Officer Defendants were unfit and incompetent for their positions.

78.     Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that the Officer Defendants were not fit for duty and were potentially dangerous.

79.     Upon information and belief, Defendant City's negligence in screening, hiring and retaining the Officer Defendants directly and proximately caused Mr. Tucker's injuries.

80.     As a direct and proximate result of this negligence, Plaintiff Tucker has suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(False Arrest and Imprisonment – New York Law)**
**(Against All Defendants)**

81.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

11

82.     The Officer Defendants wrongfully and illegally detained and imprisoned Mr. Tucker against his will by restraining him on the street and then in a police vehicle without probable cause to believe that he had committed any crime, was about to commit any crime, or posed any threat of physical harm to the Officer Defendants or anyone else.

83.     The wrongful and false imprisonment of Mr. Tucker continued when he was transferred to an NYPD precinct and placed in a holding cell.

84.     The wrongful, unjustifiable, and unlawful apprehension, detention, and imprisonment of Mr. Tucker was carried out without a valid warrant, without Mr. Tucker's consent, and without probable cause.

85.     Mr. Tucker was conscious of this confinement.

86.     This confinement was not legally privileged.

87.     At all relevant times, the Officer Defendants were employees of the City of New York and the NYPD acting within the scope of their employment.  Defendant City is therefore liable to Mr. Tucker under the doctrine of *respondeat superior*.

88.     As a direct and proximate result of this false arrest and imprisonment, Plaintiff Tucker suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(New York State Constitution, art. I, § 12)**
**(Against All Defendants)**

89.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

90.     By using excessive force against Mr. Tucker, and by stopping and arresting Mr. Tucker without legally sufficient justification, the Officer Defendants deprived Mr. Tucker of

rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 12 of the New York Constitution.

91.     In addition, the Officer Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by Article I, § 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

92.     The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers.  Said acts by the Officer Defendants were without authority of law and in abuse of their powers, and the Officer Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Tucker of his constitutional rights secured by Article I, § 12 of the New York Constitution.

93.     The Officer Defendants were responsible for the deprivation of Mr. Tucker's state constitutional rights.

94.     Defendant City, as employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

95.     As a direct and proximate result of this violation of Plaintiff's state constitutional rights, Plaintiff Tucker suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.  Awarding compensatory damages for all physical and emotional distress, anxiety, humiliation, injury to reputation, emotional harm, pain and suffering, family and social disruption and other harm, in an amount to be determined at trial;

b.  Awarding punitive damages in an amount to be determined at trial;

c.  Awarding pre- and post-judgment interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d.  Awarding such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
August 25, 2016

By: ___s/Alexander Goldenberg_____
Alexander Goldenberg
Mariann Meier Wang

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600
agoldenberg@chwllp.com
mwang@chwllp.com

*Attorneys for Plaintiff*

14